UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCY SZYMCHACK,

        Plaintiff,                                                         Hon. Janet T. Neff

v.                                                                          Case No. 1:18-cv-1223

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Specifically, the Court is limited to assessing whether the Commissioner applied the proper legal standards in making her decision and

whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). When assessing the substantiality of the evidence, the Court must consider the evidence as a whole and take into account whatever in the record fairly detracts therefrom. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the Commissioner considerable latitude and mandates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. See *Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 35 years of age on her alleged disability onset date. (PageID.206). She successfully completed high school and worked previously as a home attendant.

(PageID.49). Plaintiff applied for benefits on December 1, 2015, alleging that she had been disabled since June 17, 2012, due to a pinched nerve in her neck, osteoarthritis, chronic upper extremity pain, obesity, gastroesophageal reflux disease (GERD), migraines, depression, and anxiety. (PageID.206-28, 248).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.76-204). On January 25, 2018, Plaintiff appeared before ALJ Manh Nguyen with testimony being offered by Plaintiff and a vocational expert. (PageID.57-74). In a written decision dated May 2, 2018, the ALJ determined that Plaintiff was not disabled. (PageID.40-51). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.29-33). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2015. (PageID.42); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

---

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease of the cervical spine with compression and disc herniation; (2) migraines; (3) myofascial pain; (4) major depressive disorder; and (5) generalized anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.42-44).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can never kneel, crawl, or climb ladders, ropes, and scaffolds; (2) she can occasionally climb ramps and stairs; (3) she can frequently balance, stoop, crouch, reach, handle, and finger; (4) she can never work around hazards such as unprotected heights or unguarded and uncovered moving machinery; (5) she can understand, remember, and carry out simple instructions; (6) she can tolerate occasional changes in work setting; (7) she can occasionally deal with the general public; and (8) she can frequently deal with supervisors and co-workers.   (PageID.44).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.   While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).   This standard requires more than mere intuition or conjecture by the ALJ that the

claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 315,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.70-72). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

I.        **Medical Evidence**

In addition to the testimony presented at the administrative hearing, the administrative record contains copies of Plaintiff's statements and medical treatment records. The ALJ described this evidence as follows:

> The record documents that the claimant has complained of neck pain, and treating providers diagnosed her with degenerative disc disease of cervical spine with compression and disc herniation (4F/4, 8F/6). On June 20, 2012, imaging of the cervical spine showed mild cervical spondylolysis particularly at the C4-5 interspace (1F/26). On June 27, 2012, an MRI of the cervical spine showed disc herniation right biased at the C4-C5 level, left biased at C6-C7 level with mass effect upon the exiting nerve roots, both of these disc herniations are fairly small but do appear to impact the nerve roots (1F/27). On November 19, 2013, an MRI of the cervical spine showed persistent findings of disc bulging, right biased, at the C4-5 level minimally impacting the right C5 nerve root and slightly improved from prior, at C6-7, there is left paramedian disc bulge very slightly impacting the left C7 nerve root, also improved from the previous (1F/35). On

-6-

> January 28, 2015, an MRI of the cervical spine showed spondylitic changes of the cervical spinal column with foraminal narrowing predominantly due to bony hypertrophic changes on the right but there appears to be a new very small disc herniation laterally and posterior to the right of midline at the C6-7 level on the right (1F/38). On November 9, 2015, imaging of the cervical spine showed there is no acute fracture or malalignment of the cervical spine, and there are mild cervical degenerative changes without significant interval change (1F/9, 2F/35). An EMG showed abnormal study (8F/8). An MRI cervical spine showed mild compression at C4-C5 (4F/4). Exams showed decreased range of motion of the cervical spine, tenderness to palpation of trapezius muscles, and straight leg raising was positive in the supine position (6F/3-5, 10F/8). Treating providers prescribed medications such as Percocet (10F/11).
>
> The record also shows that the claimant has complained of body pain, and treating providers diagnosed her with myofascial pain (10F/8, 10). Exams showed tenderness in right trapezius muscles, right upper back is very sensitive to palpation, and decreased pinprick sensation and light touch on the right upper extremities (8F/5, 12F/37). An EMG showed abnormal study (8F/8). Treating providers prescribed medications such as Lyrica and trigger point injections (8F/6).
>
> The record documents that the claimant has a history of migraines (12F/38). The claimant reported having migraine headaches everyday (Hearing Transcript). An MRI of the brain showed no acute ischemia, mass or demyelinating (2F/40, 4F/4, 12F/36, 38). Treating providers prescribed medications such as Topamax (12F/38).
>
> The record also documents treating providers diagnosing her with major depressive disorder, and generalized anxiety disorder (7F/4, 6F/5). Her reported symptoms include anxiety, depression, anhedonia, decreased concentration, sleep disturbances, irritability, feelings of worthlessness and daily suicidal ideation (7F/1-2, Hearing Transcript). Exams showed she had anxious and depressed mood (7F/2, 9F/9). Treating providers prescribed medications such as Bupropion, and Clonazepam for her mental health impairments (7F/1).

(PageID.45-46).

**II.         Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that she is entitled to relief because the ALJ's determination that she does not satisfy Section 1.04 of the Listings is not supported by substantial evidence. Plaintiff bears the burden of establishing that she satisfies the requirements of a listed impairment. *See*, *e.g.*, *Bingaman v. Commissioner of Social Security*, 186 Fed. Appx. 642, 645 (6th Cir., June 29, 2006).

   A.      Section 1.04

Section 1.04 of the Listings provides as follows:

*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root. . .or the spinal cord. With:

>   A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), or
>
>   B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
>   C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging,

> manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

Plaintiff argues that she satisfies subsection 1.04(A). In support of his conclusion that Plaintiff did not satisfy this Listing, the ALJ stated:

> The claimant's degenerative disc disease does not meet or medically equal Listing 1.04 of the Appendix 1 impairments. The record fails to demonstrate nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (1.04A). Furthermore, there is no spinal arachnoiditis (1.04B) or lumbar spinal stenosis with pseudoclaudication (l.04C).

(PageID.43).

The ALJ acknowledged that Plaintiff experienced degenerative disc disease of the cervical spine, but the results of both objective and subjective testing support the ALJ's conclusion. On January 12, 2015, Plaintiff reported that her neck pain was "doing well" with medication. (PageID.369). X-rays of Plaintiff's cervical spine, taken January 22, 2015, revealed only "mild" disc space narrowing with "no other acute process." (PageID.391). A January 28, 2015 MRI of Plaintiff's cervical spine revealed no spinal cord abnormalities and a "very small" disc herniation. (PageID.358-59). X-rays of Plaintiff's cervical spine, taken on November 9, 2015, revealed only "mild" degenerative changes. (PageID.330). The results of a November 18, 2015 examination revealed that Plaintiff was not experiencing any motor or sensory deficits. (PageID.335). Treatment notes dated February 16, 2016, indicate that an MRI examination revealed no evidence that Plaintiff was experiencing nerve root impingement. (PageID.458). The results of a March 19, 2016 examination likewise revealed "no evidence of nerve root irritation." (PageID.444).

The ALJ's conclusion that Plaintiff failed to carry her burden that she satisfied all the requirements of this Listing is supported by substantial evidence. Accordingly, this argument is rejected.

### III. Physician's Assistant Todd Kreykes

On January 11, 2016, and again on November 27, 2017, Physician's Assistant (PA) Todd Kreykes completed check-box forms indicating that Plaintiff experienced far greater functional limitations than the ALJ recognized. (PageID.415-18, 519-22). For example, Kreykes reported that Plaintiff would be "off task" at least 25 percent of the workday preventing her from performing even "simple work tasks." (PageID.416, 520). Kreykes reported that during an 8-hour workday, Plaintiff was capable of sitting and standing/walking less than two hours each. (PageID.417, 521). Kreykes reported that Plaintiff can "rarely" lift/carry 10 pounds and can "never" lift/carry 20 pounds. (PageID.521). Kreykes reported that during an 8-hour workday, Plaintiff must sit with her legs elevated 75 percent of the time. (PageID.521). The ALJ, however, afforded "little weight" to Kreykes' conclusions. Plaintiff argues that she is entitled to relief because the ALJ failed to afford appropriate weight to Kreykes' opinions.

Plaintiff's argument fails for two reasons. First, Plaintiff incorrectly argues that the ALJ erred by failing to assess Kreykes' opinions pursuant to the treating physician rule. A physician's assistant is not an acceptable medical source whose opinions are entitled to any deference. *See, e.g.,* 20 C.F.R. §§ 404.1502, 416.902; *Oudsema v. Commissioner*, 2013 WL 588925 at *2 (W.D. Mich., Feb. 13, 2013). A physician's assistant is considered an "other source," whose opinions must be "considered," a requirement with which the ALJ complied. *Oudsema*, 2013 WL 588925 at *2. As a result of recent changes to the relevant regulations, a

physician's assistant is now considered an acceptable medical source, but only with respect to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1502, 416.902.

In support of his decision to discount PA Kreykes' opinion, the ALJ observed that while Kreykes "able to personally examine" Plaintiff, "he relied on a check the block form with little explanation." (PageID.48). The ALJ further concluded that Kreykes' "statements appear extreme given the fact that the claimant has had good objective examination findings, such as 5/5 and 4/5 manual muscle strength, 5/5 grip strength, no motor or sensory deficits, straight leg raising was negative in the seated position, normal reflexes, normal coordination, and normal gait." (PageID.48).

That conclusory opinions expressed on a check-box form are disfavored is well established. *See Pelak v. Commissioner of Social Security*, 2016 WL 6694477 at *7 (W.D. Mich., Nov. 15, 2016) ("ALJs are not bound by conclusory statements of doctors, particularly where they appear on 'check-box forms' and are unsupported by explanations citing detailed objective criteria and documentation"); *Birgy v. Commissioner of Social Security*, 2017 WL 4081528 at *5 (W.D. Mich., Sept. 15, 2017) (same). More importantly, however, the ALJ articulated good reasons, supported by substantial evidence, for discounting PA Kreykes' opinion. Accordingly, this argument is rejected.

**IV.        The ALJ Properly Relied on the Testimony of a Vocational Expert**

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is unsupported by substantial evidence. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d

146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed a significant number of such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Dated: October 4, 2019         /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge